# CHARLESTON.

STATE *ex rel.* R. M. WELLS V. CITY OF CHARLESTON *et al.*

Submitted December 13, 1922.     Decided December 15, 1922.

1. MUNICIPAL CORPORATIONS—*Ordinance in Conflict with State Law Void to Extent of Conflict.*

   When a municipal ordinance is opposed to the policy of the state in relation to the subject matter thereof and in conflict with the statute of the state in relation thereto, the ordinance is void to the extent of its conflict with the statute and should not be enforced. (p. 616).

2. ESTOPPEL—*Ordinance May be Contested by Municipal Authorities in Proceeding by One Claiming its Benefit.*

   And the municipal authorities are not estopped by the passage of such an ordinance from contesting its validity when brought in question in a suit or proceeding by one claiming the benefit thereof and seeking to enforce his supposed right thereunder. (p. 616).

3. MUNICIPAL CORPORATIONS—*Ordinance Inconsistent With Statutes Null and Void, Unless Authorized by Express Grant of State.*

   When an ordinance is so inconsistent with the statutes or general laws of the state, it will be null and void, unless it emanates by virtue of the express grant of the state. (p. 616).

4. SAME—*Ordinance Relating to Operation of Vehicles for Hire and Granting Permits Held Void.*

   Controlled by the foregoing principles, an ordinance of the

City of Charleston, amending and re-enacting section 433 of
the Code of Ordinances of said city, adopted December 19, 1921,
relating to the operation of vehicles for hire and the granting
of permits, being in conflict with the provisions of section 82
of chapter 112, Acts 1921, and with the public policy of the
state as evidenced by said statute, is void and unenforceable.
(p. 616).

Mandamus by the State, on the relation of R. M. Wells,
against the City of Charleston and others, to compel defend-
ants to grant plaintiff permits to operate motor vehicles for
hire.

*Writ refused.*

*Camp & Lilly,* for relator.
*Donold O. Blagg,* for respondents.

MILLER, JUDGE:

The relator has applied for a writ of mandamus to compel
respondents, the City of Charleston, its mayor and indi-
vidual councilmen, to act favorably upon two separate ap-
plications by him for permits to operate motor vehicles for
hire in said city; the first, as described in the petition, "to
operate a five passenger Ford Touring Car, commonly known
as and called a Jitney Bus. The same to be used for re-
ceiving, carrying and discharging passengers within the cor-
porate limits of said city, for which a fee of ten cents is to be
charged to each and every passenger;" the second, as like-
wise described in his other petition, to operate a fourteen pas-
senger Ford Bus, to be used for receiving, carrying and dis-
charging passengers within the corporate limits of said city,
and for which a fee of seven cents is to be charged to each and
every passenger; the only difference between the two appli-
cations being the size and capacity of the vehicles, and the rate
of fare to be charged. If granted, the applicant would be
limited to no specific route, or to any regulation other than
the rate of charges for the services to be rendered.

In each instance petitioner predicates his right upon a cer-
tain ordinance, being an amendment and re-enactment of sec-
tion 433 of the municipal code of said city, adopted on No-
vember 20, 1922, entitled: "An Ordinance to amend and re-

enact the Code of Ordinances of the City of Charleston, adopted on the 19th day of December, 1921, relating to the Operation of Motor Vehicles for Hire,'' as follows:

"Be it Ordained by the Council of the City of Charleston:—

That section 433 of the Code of Ordinances of the City of Charleston, adopted the 19th day of December, 1921, be and the same is hereby amended and re-enacted so as to read as follows:

*Section* 433.    *Vehicles for hire; permit; bond.*

No motor or other vehicle shall be operated over any street, avenue, alley or public way within the City of Charleston, for the carriage of passengers, freight, or merchandise, for hire, until the owner or operator of such vehicle shall have first made application to and secured from the Council a permit to operate such vehicle. The application for such permit shall state the capacity of such vehicle or vehicles, the purpose for which the same is to be used, and the rates proposed to be charged. When such permit is issued, which, in all cases the council shall issue, upon the applicant's complying with the provisions of this section, no such vehicle shall change its fares without the permission of the Council. If such motor vehicle be for the carriage of passengers, it shall be plainly marked so as to designate the schedule of fares charged; if such vehicle be for carriage of freight or merchandise, it shall be appropriately marked with plain letters and figures showing the load authorized to be carried. The driver of such vehicle shall, when requested, produce such permit or a certified copy thereof. All permits shall be good until the first day of January, next following. The possession of such permit shall not exempt any person, firm or corporation from the payment of registration fees for vehicles, as provided by law. A bond to be approved by the Council shall be required of each applicant, which bond shall accompany the application, and shall be in the sum of not less than five hundred dollars, and no more than five thousand dollars, conditioned that the owner, or the person to whom the permit to operate such vehicle is issued, shall pay any and all lawful claims for damages or injury to person or property sustained by passengers in such vehicle, or by any other person

or persons that may be killed, injured or suffer damage to property by reason of the negligent or improper operation of said vehicle. Said bond shall likewise inure to the benefit of the estate of any person who dies as a result of injuries resulting from the negligent or improper operation of such motor vehicle, and said bond shall not be void on the first recovery, but may be sued on until the full penal sum named therein shall be recovered. The amount of such bond shall be as follows: For the first horse-drawn vehicle to be operated, the bond shall be five hundred dollars, and one hundred dollars for each additional horse-drawn vehicle to be operated by the same owner or operator; for the first motor vehicle to be operated the bond shall be twenty-five hundred dollars, and five hundred dollars for each additional motor vehicle to be operated by the same owner or operator; provided, that bond in excess of five thousand dollars shall in no case be required from any one applicant.

Any person operating a vehicle under a permit as provided in this section shall keep the name of the owner painted in plainly legible letters at least one inch high on the outside of such vehicle.

Any person violating any of the provisions of this section shall be guilty of a misdemeanor, and upon conviction, shall be punished by a fine of not less than five dollars, and in addition thereto such permit may be revoked by the Council.''

This ordinance was passed under three several whereases, as follows:

Whereas, On the 15th day of May, 1922, R. M. Wells and seventeen hundred and thirty-one other residents and voters of the City of Charleston filed their petition with the City Clerk, praying the City Council of this City to pass a certain proposed amendment to section 433 of the Code or Ordinances of the City, in form as hereinafter set out, or to submit the same for ratification or rejection to the voters of said City; and

Whereas, said petitioner R. M. Wells thereafter applied to the Supreme Court of Appeals of West Virginia for a writ of mandamus to compel the council to either pass said amended ordinance or submit the same to the voters as aforesaid; which writ of manda-

mus was awarded by the said Court on the 17th day
of October, 1922; and

Whereas, the Council of the City of Charleston de-
sires to comply with the writ of mandamus, but does
not conclude that said proposed ordinance is or would
be valid in law when adopted; the said council intends
hereby neither to waive any of its rights or powers
with reference to the regulation or licensing of motor
vehicles as prescribed in the statutes of West Virginia,
nor to evade or escape any duty imposed upon it
thereby; but does hereby adopt this ordinance for the
sole purpose of complying with said mandate of the
Supreme Court of Appeals, and of putting in effect
the said proposed amendment to section 433 of said
Code of Ordinances, in so far only as the same is valid
and legal and would be effective if adopted by .ma-
jority vote of the qualified voters at an election duly
called and held pursuant to said petition and the writ
of mandamus aforesaid, it being desired to avoid the
great expense of holding such election.; Now, There-
fore,'' etc.

The reasons or ground for our decision upon relator's
former petition are fully set forth in the written opinion de-
livered then and reported in ** W. Va.'** 114 S. E. 382.
In that case we in fact held that respondents could not ques-
tion the constitutionality or validity of an ordinance upon
an application for a referendum vote, or in opposition to
its enactment as an alternative to its submission to a vote of
the people pursuant to the provisions of the city charter.

By their return to the present writ respondents rely on
the same defenses which they undertook to set up to the
alternative writ awarded in the former case; namely, the al-
leged unconstitutionality of the ordinance and its supposed
conflict with the general road law of the state, namely, cer-
tain provisions of chapter 112, Acts 1921, and particularly
section 82, paragraph designated ''Class I'' of said section.
It will be found by comparison of the general law with this
amended ordinance, that the latter follows generally the lan-
guage of the former, but omits certain important provisions
thereof, notably those provisions describing the particular
class of service or services to which the statute was intended

to apply, namely, the carriage of passengers, freight or merchandise for hire in such manner as affords a regular means of transportation, by indiscriminately receiving, carrying and discharging passengers, freight or merchandise along the route along which the vehicle is operated, or for transporting passengers, freight or merchandise for hire as a business between fixed termini. It also omits another important provision of the statute providing: ''If the permit be granted, the state road commission, or other licensing authority, as the case may be, shall prescribe the route, schedule, fare or tariff in connection with such service, and may make such other rules and regulations relative to the operation of such vehicle or vehicles, as public justice may demand. When such permit is issued, no such motor vehicle shall change its route, schedule, fare or tariff, without the permission of the state road commission, or other licensing authority, as the case may be.''

The old ordinance was substantially the same as the provisions of section 82, ''Class I'' chapter 112, Acts 1921, and the manifest purpose of the relator and others in pressing passage of the amendment by the council, or by the referendum demand, was to avoid the burdens imposed by the state law as to definite routes etc., and give them benefits to which they would not be entitled under the state road law, administered, as provided, by the city council, the licensing body, and upon whom the state devolved the duty of regulation, etc.

We think the ordinance as amended is clearly in conflict with the state law. If enforced as enacted it would allow the relator the privilege of operating his motor vehicles at his pleasure over the routes of others who have complied with the state statute and are required to run on schedules and routes for the benefit of the public or the public convenience. This would be contrary to the public policy of the state as evidenced by the state road law, and clearly in conflict with it; and being so, the ordinance will have to yield to the paramount law.

But it is urged by counsel on behalf of the relator that the mayor and common council of the City of Charleston

may not defend the suit on the ground that the ordinance is unconstitutional or invalid on other grounds. To this proposition we can not give our assent. While mandamus will not lie to restrain or enjoin the council to act in its legislative capacity, it is quite a different proposition when it comes to controlling it or its officers in the administration of its laws and ordinances. It is not only the legal right, but the duty, of municipal officers to prevent all violations of law, and to that end as trustees of the public interests they may question the validity of an ordinance by proper legal proceedings. 2 McQuillin on Municipal Corporations, § 800; *Block* v. *Crockett*, 61 W. Va. 421. Municipal authorities in some cases may be estopped from contesting the validity of their ordinances where they have granted privileges or rights under them and thereby induced or led the beneficiary into the belief that the ordinance was valid. This is particularly so when such person might otherwise be rendered criminally liable or be called upon to sacrifice some personal or property rights. *Hagerstown* v. *Hagerstown Railway Co.*, 123 Md. 183, 7 A. L. R. 1239, and note; *Zimmerman* v. *Gritzmacher*, (Ore.), 21 L. R. A. (N. S.) 299, and note; *Clark* v. *City of Elizabeth*, 61 N. J. L. 565. In the case here the respondents have done nothing by which they can be estopped from questioning the validity of said ordinance, and besides, they could not escape the duty imposed upon the council, the licensing body, by the state statute. The law is that when an ordinance is inconsistent with the statutes or general laws of the state, it will be null and void, unless it emanates by virtue of the express grant of the state. McQuillin Municipal Ordinances, § 16; *Thomas* v. *Richmond*, 12 Wall. 349; *Thompson* v. *Carroll*, 22 How. 422; *Block* v. *Crockett*, *supra*.

For the foregoing reasons we are of opinion to deny the writ.

*Writ refused.*