64 S.E.2d 676 (1950)
CITY OF CHARLESTON
v.
SOUTHEASTERN CONST. CO. et al.
C. C. No. 769.
Supreme Court of Appeals of West Virginia.
Submitted August 3, 1950.
Decided August 7, 1950.
Opinions Filed April 17, 1951.
*677 John C. Vance, John J. D. Preston, Charleston, for plaintiff.
William C. Marland, Atty. Gen., Eston B. Stephenson, Asst. Atty. Gen., Londo H. Brown, Asst. Atty. Gen., for defendants.
RILEY, Judge.
The City of Charleston, a municipal corporation, brought this suit in equity in the Circuit Court of Kanawha County, against Southeastern Construction Company, a corporation; The State Office Building Commission of West Virginia (sometimes hereinafter referred to as the "building commission"; Honorable Okey L. Patteson, Governor; Honorable William C. Marland, Attorney General; Honorable D. L. Gainer, Director of the Budget; individually and as members of The State Office Building Commission of West Virginia; and Honorable Okey L. Patteson and Honorable D. L. Gainer, Secretary of The State Office Building Commission of West Virginia, for an injunction restraining the defendants from constructing a state office building upon premises purchased by the State of West Virginia from revenues appropriated by the Legislature for The State Office Building Commission, which premises are situate at the southeast corner of California Avenue and Washington Street in the City of Charleston. The basis of the injunctive relief is that the contemplated construction is in violation of the provisions of the Official Building Code of The City of Charleston of 1945, and the Building Zone Ordinance of the City, adopted on May 2, 1939, by the Municipal Planning Commission, and approved by ordinance of July 10, 1939. The circuit court upon joint motion of the parties, certified to this Court its rulings in overruling the demurrer to plaintiff's bill of complaint.
An order having been heretofore entered in this case, this opinion is written for the purpose of stating the conclusions which prompted the Court to enter the order.
The bill of complaint alleges that powers and duties of the plaintiff, The City of Charleston, were conferred and imposed by special charter, Acts of the Legislature of West Virginia, 1915, Municipal Charters, Chapter 1; Acts of the Legislature, 1919, Municipal Charters, Chapter 9; Acts of the Legislature, 1921, Municipal Charters, Chapter 4; Acts of the Legislature, 1923, Chapter 82; Acts of the Legislature, 1925, Municipal Charters, Chapter 12; Acts of the Legislature, 1927, Municipal Charters, Chapter 8; Acts of the Legislature, 1929, Municipal Charters, Chapter 4; Acts of the Legislature, 1933, Regular Session, Chapter 117; and by general municipal law of the State, Code, West Virginia, 8-5 and 8A-4-19 and 24; and then proceeds to set out verbatim the following excerpts from the foregoing statutory enactments, dealing with powers and duties:
"* * * to provide for and regulate the safe construction, inspection and repairs of all public and private buildings, * * * to regulate the height, construction and inspection of all new buildings hereafter erected, and the alteration and repair of any buildings already erected or hereafter erected in said city, and to require permits to be obtained for such buildings and structures, and plans and specifications thereof to be first submitted to the building inspector;" (Acts of the Legislature, 1929, Municipal Charters, Chapter 4, Section 7).
"For the purpose of promoting health, safety, morals, or the general welfare of the city and community, * * * to regulate and restrict the height, number of stories, and size of buildings and other structures, the percentage of lot that may be occupied, the size of yards, courts and other open spaces, the density of population, and the location and use of buildings, structures and land for trade, industry, residents or other purposes. * * * [With a specific exemption as to buildings or structures used by a public service corporation]." (Section *678 102, Acts of the Legislature, 1929, Municipal Charters, Chapter 4).
"* * * the council may divide the city into districts of such number, shape and area as may be deemed best suited to carry out the purpose of this and the four succeeding sections, and within such districts it [council] may regulate and restrict the erection, construction, alteration, repair or use of buildings, structures, or land. All such regulations shall be uniform for each class or kind of buildings throughout each district, but the regulations in one district may differ from those in other districts." (Section 102-a, Acts of the Legislature, 1927, Municipal Charters, Chapter 8.)
"Such regulations shall be made in accordance with a comprehensive plan, and designed to lessen congestion in the streets; to secure safety from fire, panic and other dangers; to promote health and the general welfare; to provide adequate light and air; to prevent the overcrowding of land; to avoid undue concentration of population; or to facilitate the adequate provision of transportation, water, sewerage, schools, parks, and other public requirements. Such regulations shall be made with reasonable consideration, among other things, to the character of the district and its peculiar suitability for particular uses, and with a view to conserving the value of buildings and encouraging the most appropriate use of land throughout the city." (Section 102-b, Acts of the Legislature, 1927, Municipal Charters, Chapter 8).
The bill of complaint alleges that Code, 8-5, and specifically Sections 1, 2, and 3 thereof, grants to municipalities the power to zone for the health, safety, morals and general welfare of the respective communities; and that Acts of the Legislature, 1937, by Chapter 56, 8A-4-19, 24, empowers cities to "Regulate the erection, construction, repair and alteration of structures of every kind within the city"; and further provides that "A city may provide for city planning and zoning in accordance with * * * [Code, 8-5]".
It is further alleged in the bill of complaint that, pursuant to the foregoing statutory authority, The City of Charleston adopted the building zone ordinance of July 10, 1939, and by ordinance passed on March 9, 1936, filed as Exhibits Nos. 1 and 2, respectively. From Exhibit No. 1, it appears that the parcel of land in question lies in a zoned district, designated as "Residence `C' District", the maximum height of buildings within which district is not to exceed four stories or fifty feet, except in case of public or semi-public buildings the maximum height shall not exceed seventy-five feet or more than six stories. Sections 36, 37 and 38 provide the maximum width for front, side and rear yards. The building code (Exhibit No. 2) provides that "no person shall erect or construct any building or structure whatever, * * * without first obtaining a building permit from the [City] Building Inspector", after filing written application therefor.
The building commission by its secretary submitted the plans and specifications for the proposed building to the building inspector of the city of Charleston, and made application for a building permit, pursuant to the building code, which application was refused. Nevertheless, the State Office Building Commission, by letter dated May 3, 1950, notified the city of its intention to award the contract to the successful bidder, Southeastern Construction Company; and on May 19, 1950, the building inspector served a "Stop Order" in respect to the work preparatory to the construction of the building. This suit then followed.
From the bill of complaint it appears that the lot in question fronts one hundred twenty feet on California Avenue, with a depth of one hundred forty-four feet on Washington Street and is bounded on the east by a fourteen-foot alley. The proposed building will be set back twenty feet from the property line of California Avenue, a one-foot setback on the alley, and no setback from the property line of Washington Street.
So if a building permit is required of the building commission and the zoning ordinance applies, the proposed building would be in violation of both the building code and the zoning ordinance.
*679 In the appraisement of the foregoing question, it becomes necessary to consider the provisions of Chapter 43, Acts of the Legislature, 1939, creating and defining the powers and duties of The State Office Building Commission, whereby it is empowered: "To sue and be sued, plead and be impleaded" (Sec. 3, Subsection 1), and "To construct a building or buildings on real property, which it may acquire, or which may be owned by the state of West Virginia, in the city of Charleston, as convenient as may be to the capitol building, together with incidental approaches, structures and facilities, subject to such consent and approval of the city of Charletson in any case as may be necessary" (Section 3, Subsection 9).
In Section 7 of the last-mentioned Act, as amended by Chapter 18, Acts of the Legislature, 1945, the commission is empowered to raise the cost of such project by the issuance and sale of revenue bonds; and in Section 2, sixth paragraph, and Section 3, Subsection 11, Chapter 43, Acts of the Legislature, 1939, it is authorized to rent the buildings, and parts thereof, to public and private tenants for compensation.
The proposed building, as contemplated by the plans and specifications, is to be constructed on property located on the southeast corner of California Avenue and Washington Street, in the City of Charleston, which is owned by the State of West Virginia; and, as disclosed by the deed therefor, recorded in the office of the Clerk of the County Court of Kanawha County, the property was purchased for the sum of forty thousand dollars, the appropriation therefor being included in the general appropriation Act contained in Chapter 9, Acts of the Legislature, 1949. Item 3, Subsection (g), Section 5, Title 2, of Chapter 9, reads: "State Office Building Commission, for purchase of land upon which to construct a building to house state agencies supported in whole or in part from federal funds or state agencies supported by special funds. The amount of this appropriation to be available upon the passage of this act * * * $40,000.00".
The circuit court in overruling the demurrer to plaintiff's bill of complaint filed a written memorandum, in which the court, among other things, expressed the opinion that The State Office Building Commission is a quasi-private corporation.
This certificate involves specific grounds of demurrer. Grounds Nos. 8 and 9 need not be considered in the opinion in this case, as they are catch-all grounds. The specific grounds which we must consider, namely, 1 to 7, inclusive, read:
"The construction of state office buildings is not subject to the requirements and provisions of Chapter 33 of the Code of Charleston, 1942, known as the building and zoning ordinances of said city, and which regulate the location, type, plan and mode of construction of buildings and other structures within the City of Charleston.
"2. The building code and zoning ordinances of the City of Charleston do not specifically include the State of West Virginia, and therefore the said ordinances are inapplicable to the said State of West Virginia.
"3. The building code and zoning ordinances of the City of Charleston could not apply to the construction of state office buildings or otherwise restrict or limit the use of such public property for public purposes.
"4. The attempt of the City of Charleston to compel the State of West Virginia to conform to the city zoning ordinances is against the public policy of this state.
"5. The Legislature cannot delegate to the City of Charleston the power to require the state to conform to city building codes and zoning ordinances with respect to state office buildings, as the same would be an unlawful and unwarranted attempt by the Legislature to place a nondelegable power in the City of Charleston with respect to a governmental function properly belonging to the citizens of the state and not purely local in nature, in violation of Section 2, Article II, and Article V, and Section 2, Article VI of the Constitution of West Virginia.
*680 "6. The Legislature cannot delegate or barter to the City of Charleston a fundamental, basic and sovereign power of the people of the state necessary to government.
"7. Even if the Legislature could delegate to a city the power to dictate to the state in matters of state concern, subsection 9, Section 3, Article 6, Chapter 5 of the Code of West Virginia would be unconstitutional if it were held to be such a delegation of power, for the reason that the Legislature did not set up any standards or definite limitations under which the City of Charleston could act in requiring a building permit for a state office building, in violation of Article V of the Constitution of West Virginia."
These several grounds of demurrer have been correctly resolved by counsel for plaintiff into three propositions, namely: "(1) Do the Charleston ordinances apply to a building project of The State Office Building Commission; (2) can the Legislature delegate building and zoning regulatory police powers over property and structures of The State Office Building Commission to The City of Charleston; and (3) if the Legislature may delegate such powers to the City of Charleston, is such delegation invalid because of the absence of prescribed standards?"
Two major propositions, as the opinion of the circuit court states, are asserted by the defendants in the specific grounds of demurrer: (1) The State has not granted to The City of Charleston the right to regulate in any way the construction of State buildings by the general zoning statute, Code 8-5, and the provision in Subsection 9, Section 3, Chapter 43, Acts of the Legislature, 1939, creating The State Office Building Commission, to the effect that the construction of buildings by the commission shall be "subject to such consent and approval of the city of Charleston in any case as may be necessary;" and (2) if the Legislature has attempted to permit such regulation, the attempt constitutes an unconstitutional delegation of power.
Initially, the question arising on this record is whether, as the circuit court held, The State Office Building Commission is a quasi-private corporation, engaged in a proprietary capacity, when it undertakes to build the proposed building, which is to be financed from revenue bonds only, which, under Section 2 of Chapter 43, Acts of the Legislature, 1939, may be rented to private corporations or persons, or whether The State Office Building Commission is a State agency engaged in a governmental capacity in the construction and in the future operation and management of the proposed building. It is true that under the provisions of Chapter 43, The State Office Building Commission is given some of the powers of a private corporation, but it likewise has the attributes of a public corporation. The fact that the building commission has no power to create a State debt and that the holders of the revenue bonds proposed to be issued may enforce payment of their bonds against the property and that such revenue bonds shall be exempt from taxation by the State of West Virginia, or any county or municipality therein, does not, in our opinion, take the building commission out of the category of a State agency. Chapman v. Huntington, West Virginia, Housing Authority, 121 W.Va. 319, 336, 3 S.E.2d 502; West Central Producers Co-Operative Association v. Commissioner of Agriculture, 124 W.Va. 81, 20 S.E.2d 797; Meisel v. Tri-State Airport Authority, W.Va., 64 S.E.2d 32, pt. 1 syl., decided on March 1, 1951, at the January, 1951, term of this Court; and while we do not have the question immediately before us whether under the provisions of said Chapter 43 the building commission may rent to a private person or persons, the fact that in that sense the commission may be acting as a private property owner, the over-all purpose of the construction of buildings under said Chapter 43 is the housing of public agencies, and the fact that rental moneys may be obtained from private sources does not take the public or governmental character from the building commission. In Schippa v. West Virginia Liquor Control Commission, 132 W.Va. ___, 53 S.E.2d 609, 610, 9 A.L.R.2d 1284, this Court held *681 that the commission, though organized for the purpose of engaging in the business of selling intoxicating liquor, is an "agency of the State", engaged in the performance of governmental functions and duties, and, as such, under Section 35, Article VI of the Constitution, is immune from suit. See also State ex rel. Board of Governors of West Virginia University v. Sims, Auditor, W.Va., pt. 2 syl., 59 S.E.2d 705; Sims v. Fisher, 125 W.Va. 512, 538, 25 S.E.2d 216; State ex rel. Gordon v. State Board of Control, 85 W.Va. 739, 741, 102 S.E. 688.
In the instant case, however, the status of The State Office Building Commission is of no importance, because the building is to be erected on land owned by the State, and purchased from public revenues appropriated in the general appropriation Act, contained in Chapter 9, Acts of the Legislature, 1949, and whatever The State Office Building Commission may be empowered to do with reference to other buildings in the matter of renting to private corporations or persons, that question likewise is of no moment in the instant suit, for the very Act providing for the appropriation of forty thousand dollars, the purchase price of the land upon which the building is to be erected, provides solely for the construction of a building "to house state agencies supported in whole or in part from federal funds or state agencies supported by special funds."
We therefore hold that The State Office Building Commission is an agency of the State, which, in the construction of the proposed building and in its future management and control, is and will be acting in a governmental, as distinguished from a proprietary capacity. That being so, under the holding of this Court in Schippa v. West Virginia Liquor Control Commission, supra, and kindred cases, it is immune from suit under Section 35, Article VI of the Constitution of this State.
We further hold that as the building is to be erected on property purchased by the State of West Virginia, appropriated from the revenue funds of the State, the purpose of the building being to provide only for housing of State agencies, either supported in whole or in part from Federal funds, or State agencies supported by special funds, the building is a public building.
What then is the effect of the zoning ordinance read in connection with the provision in said Chapter 43, creating The State Office Building Commission, to the effect that the construction of the building by the commission shall be "subject to such consent and approval of the city of Charleston in any case as may be necessary"? We are of opinion that for the moment, disregarding the last-quoted provision in said Chapter 43, that the zoning ordinance, whether it was enacted before or after the effective date of said Chapter 43, does not govern The State Office Building Commission in its construction and future operation and control of the building. In this position we are governed by the clear weight of authority in this country. In Kentucky Institution for Education of Blind v. City of Louisville, 123 Ky. 767, 97 S.W. 402, 8 L.R.A., N.S., 553, the Kentucky Court held that "a city ordinance requiring `all buildings occupied by any person or persons or in which any person or persons shall be employed or assemble, of three or more stories in height (except private residences) shall be provided with one or more improved fire escapes when ordered by the inspector or his deputy,' * * * does not apply to a blind asylum created and belonging to the State located in such city, which is under control of a board of visitors appointed by the Governor with the approval of the Senate." In City of Milwaukee v. McGregor, 140 Wis. 35, 121 N.W. 642, the Court held that in the case of the construction of a building by the state board for state purposes under state authority, the matter is wholly the concern of the state and not subject to general state or municipal regulation. The general rule in this jurisdiction is that "When a municipal ordinance is opposed to the policy of the state in relation to the subject-matter thereof and in conflict with the statute of the state in relation *682 thereto, the ordinance is void to the extent of its conflict with the statute and should not be enforced." State ex rel. Wells v. City of Charleston, 92 W.Va. 611, pt. 1 syl., 115 S.E. 576. In the opinion, 92 W.Va. at page 617, 115 S.E. at page 578 this Court observed that "The law is that when an ordinance is inconsistent with the statutes or general laws of the state, it will be null and void, unless it emanates by virtue of the express grant of the state. McQuillin, Municipal Ordinances, § 16; Thomas v. [City of] Richmond, 12 Wall. 349, 20 L.Ed. 453; Thompson v. Carroll, 22 How. 422, 16 L.Ed. 387; Block v. Crockett, supra [61 W.Va. 421, 56 S.E. 826]."
But did the consent clause contained in said Chapter 43 constitute a valid express grant of the State? We think not. As heretofore stated the Charleston zoning ordinance was passed on July 10, 1939. Chapter 43 of the Acts of the Legislature, 1939, creating The State Office Building Commission, was enacted on March 9, 1939, and became effective ninety days from passage, so at the time Chapter 43 was enacted, the zoning ordinance in question had not been passed. If we should hold that the zoning ordinance should apply, we would thereby give to the Council of the City of Charleston and to future councils thereof unbridled power to enact ordinances as to building zones, such as they might deem proper. Such delegation would make the Legislature subservient to every future action of the Council of the City of Charleston, and thus reside in the authorities of that city future indefinite powers without any standards whatsoever to guide or control them, in which event the Council of the City of Charleston could act arbitrarily and capriciously. Moreover, the Legislature is without power to bind future Legislatures, and it cannot grant or delegate the right to exercise in perpetuity the police power of the State. Such delegation would be violative of Section 1, Article VI of our Constitution, which reads: "The legislative power shall be vested in a Senate and House of Delegates. * *" The foregoing is an accepted principle of law. See 1 Cooley's Constitutional Limitations (8th ed.) 436, wherein it is stated: "Equally incumbent upon the State legislatures and these municipal bodies is the restriction that they shall adopt no irrepealable legislation. No legislative body can so part with its powers by any proceeding as not to be able to continue the exercise of them. It can and should exercise them again and again, as often as the public interests require. Such a body has no power, even by contract, to control and embarrass its legislative powers and duties. * * *."
And, finally, there is another and controlling reason why we think the demurrer to the bill of complaint should have been sustained, rather than overruled as held by the circuit court. Assuming that the power to control the erection of the proposed office building, and the requirement of a building permit are validly vested in the councilmanic authorities of The City of Charleston, they have not, in our opinion, either by the enactment of the building code or the zoning ordinance effectively exercised those powers. Section 201, Chapter 2, Part 1, of the Official Building Code of The City of Charleston, filed as Exhibit No. 2 with plaintiff's bill of complaint, provides expressly that "No person shall erect or construct any building or structure whatever * * * or cause the same to be done without first obtaining a building permit therefor from the Building Inspector * * *"; (italics supplied) and that "Any person desiring a building permit * * * shall file with the building inspector an application therefor." (Italics supplied.) The zoning ordinance provides in Section 79 thereof for penalties to be inflicted upon "any person" who violates the provisions thereof; and Section 84 thereof grants the right of an appeal to the Circuit Court of Kanawha County from the decision of the board of adjustment, to "any persons, jointly" or severally, or any taxpayer, or any officer, department, board or bureau of the municipality. Neither the building code nor the ordinance specifically mentions a public building, and, though Code, 2-2-10, defines the word *683 "person" in the following language: "The word `person' or `whoever' shall include corporations, societies, associations and partnerships, if not restricted by the context"; and the general rule in the interpretation of statutes is that the word "person" includes private corporations, United States v. Union Supply Co., 215 U.S. 50, 30 S.Ct. 15, 54 L.Ed. 87; Covington & L. Turnpike Road Co. v. Sandford, 164 U.S. 578, 17 S.Ct. 198, 41 L.Ed. 560, the rule is not applicable in this jurisdiction to State agencies which are an arm of the State, or even to public corporations, which are not State agencies. Welch Lumber Co. v. Carter Bros. & Bird, 78 W.Va. 11, pt. 2 syl., 88 S.E. 1034, 2 A.L.R. 1583.
For these reasons we are of opinion that the demurrer to the instant bill of complaint should have been sustained, and, therefore, we reverse the rulings of the trial chancellor.
Rulings reversed.
FOX, President (dissenting).
I cannot concur in all of the conclusions reached by the majority in this case, nor with the result following therefrom. Therefore, this note of dissent is filed to certain holdings and to the result.
The question of whether the State Office Building Commission is immune from suit under Section 35 of Article VI of the Constitution is a debatable one. That section provides that: "The State of West Virginia shall never be made defendant in any court of law or equity * * *." Even if the building commission is immune from suit, it does not operate to prevent the prosecution of the suit as against the members of the commission or the other defendants named in the bill. As an abstract proposition of law, I agree with the statement made in Point 2 of the Syllabus to the effect that public buildings of the State are not subject to the zoning ordinance or the building code adopted by a municipality, unless made so by an act of the Legislature. I insist, however, that the Legislature has full power and authority to delegate to municipalities the power to make its ordinances apply to public buildings. I thoroughly agree with Point 3 of the Syllabus. As to Point 4 of the Syllabus, I do not think the highly technical rule laid down therein has any application to this case. In my view of the case, the State Office Building Commission is limited in its powers, cannot proceed beyond that limitation, and if the act under which it was created is not intended to apply to public buildings, there could have been no purpose in its enactment.
I do not question the ultimate and absolute power of the State, as a sovereign, to erect buildings or other improvements which are to be devoted, in their entirety, to governmental purposes; and, in my opinion, all delegation of power to municipalities to adopt and enforce zoning ordinances and building codes should, unless otherwise provided, be interpreted as not intended to be applied to the State, where the exercise of its power to construct buildings and other structures for public use is involved. It seems to me to be unreasonable to assume that the State, through its Legislature, has ever intended to grant or delegate to one of its creatures the power and authority to override its sovereign prerogative and make unavailable for its governmental purposes such parts of its domain as are necessary therefor, subject, of course, to the right of private owners to compensation for any property taken. Therefore, I do not disagree with the holdings of the majority on that point. However, for reasons which I shall attempt to state, I do not believe that the State Office Building Commission has been empowered by the State, through its Legislature, to locate and erect the proposed office building without the approval and consent of the governing authorities of the City of Charleston. In my opinion, the State has voluntarily placed this limitation on its sovereign powers by which its agency is bound, until such time as the State may elect to resume its full powers.
The power of the sovereign in respect to zoning and building codes is exercised by the use of what is termed the police *684 power of the State. It is one of the principal attributes of sovereignty, and is exercised and applied by the legislative department of the State. Its uses are manifold and escape definite limitation. It may be said that all matters affecting the lives, property, health, comfort, morals, peace and quietude of the people of the State are comprised within the meaning of the police power of the State, and, undoubtedly, the proper zoning of congested areas and centers of population, illustrated by our towns and cities, for business, manufacturing and residential purposes, and the regulation of the building methods employed therein, come within such power.
While this power rests in the State as a sovereign, it may not be granted or delegated in any form in perpetuity, and beyond recall. It does not follow that it may not be delegated to various agencies of government, including municipalities, under such restrictions as circumstances suggest. As to the zoning and building codes of our towns and cities, it may be said that the power to define and enforce regulations in respect thereto is, in this State, almost, if not entirely, delegated to the governing bodies of its respective municipalities. The reasons for this policy are apparent. Each community presents its particular problem, and no law which attempted to provide uniform regulations throughout the State would meet the needs of the various centers of population, usually organized into municipal corporations. Thus it is that to the municipalities of the State, whether organized under special charter, or under general law, there is delegated, in slightly varying forms, the power to adopt reasonable zoning ordinances, and what is termed building codes. The regulations imposed thereby are considered necessary to provide proper sanitation, light and air, and equally guard against the hazards of fire and flimsy and improper construction in general. In the larger towns and cities the traffic problem has become an important consideration.
The City of Charleston, one of the oldest municipalities of the State, operates under a special charter enacted by the Legislature. The charter of said city, as amended and reenacted in 1927, appears to deal with the problem of construction and zoning. As to these problems, the city also operates, to the extent applicable, under the provisions of Chapter 8, Article 5 of the Code, and under Sections 19 and 24, Article 4, of Chapter 56, Acts of the Legislature, 1937, now incorporated in 1949 Michie's Code, 8A-4-19 and 24, providing for municipal home rule.
Sections 102, 102-a, 102-b, 102-c and 102-d of the 1927 Charter, Chapter 8, Acts of the Legislature, 1927, broadly delegate to the City of Charleston powers in respect to zoning and the construction of buildings within the city. Space does not permit, nor is it necessary to go into detail as to these delegations of power. Suffice to say that they cover the subject in detail and in a comprehensive manner.
Section 102 was later amended in a manner not important in this controversy. As so amended, the charter provisions, aforesaid, still remain in force, and, as I understand, are not in any way limited by the general statutes enacted subsequent thereto, as an examination of Code, 8-5, and Chapter 56, Acts of the Legislature, 1937, implementing the Municipal Home Rule Amendment to the Constitution of the State, will attest. If these later statutes are to be given any effect, they tend to broaden, not limit, the powers delegated to the types of municipalities covered thereby.
Acting under the delegated powers aforesaid, the City of Charleston, on March 9, 1936, adopted a comprehensive building code ordinance, and on July 10, 1939, a building zone ordinance, which, together, cover all phases of zoning and building in said city. It is unnecessary to here deal with the intricate details of these ordinances. Suffice to say that what the State Office Building Commission proposes to do admittedly violates such ordinances in more than one particular.
Prior to the enactment of the 1927 Charter, aforesaid, the State of West Virginia selected a plot of land on the north bank of the Great Kanawha River, between Duffy Street and California *685 Avenue, in said city, and extending from the river north to Washington Street, as the location for its new Capitol building, and such building was thereafter erected on that location. Streets and alleys running through said location were discontinued, and appropriated by the State. An eminent architect, Cass Gilbert, was employed to plan and supervise the erection of such building, and, in connection therewith there was prepared by Gilbert a plan for the future expansion of the Capitol area which, by said plan, was to extend northward between Duffy Street and California Avenue from Washington Street to the hill beyond the tracks of the New York Central Railroad Company, within which area it was planned to erect additional buildings to meet the future needs of the State, the area being sufficient for that purpose, and such buildings to be erected in keeping with the general plan, and to harmonize with the Capitol structure and with each other. The so-called "Gilbert Plan" has met with generous acceptance, and, by common knowledge, a large office building is now being erected by the State, by direct legislative authority, on the area aforesaid, and in keeping with the "Gilbert Plan". However, it is not contended by anyone that the said plan has been legally adopted by the State or legally recognized by the city, and it is here referred to only for the purpose of indicating what the Legislature must have had in mind when the statute creating the State Office Building Commission was enacted by it in the year 1939, long after the plan was set up, which was while the Capitol was being constructed from the years 1923 to 1931.
In this situation, the Legislature, apparently sensing the need of additional office space for the use of State departments and agencies, and desiring to provide for such needs without placing an additional burden on State revenues, conceived the idea of creating a State Office Building Commission as an agency of the State, with power to erect buildings on land owned by the State, and to issue and sell revenue bonds to be liquidated over a term of years by applying the net rentals to be derived from the buildings to be erected under such authorization. At its regular session, 1939, it enacted into law House Bill No. 414, Chapter 43 of the Acts of said session, by which, after creating said commission and declaring it to be an agency of the State, it conferred on the said commission certain powers including the following: "To construct a building or buildings on real property, which it may acquire, or which may be owned by the state of West Virginia, in the city of Charleston, as convenient as may be to the capitol building, together with incidental approaches, structures and facilities, subject to such consent and approval of the city of Charleston in any case as may be necessary; * * *."
Section 7 of the Act, relating to the issuance of revenue bonds was amended by Chapter 18, Acts of the Legislature, 1945, but such amendment has no bearing on the controversy now before the Court.
The crucial question before the Court, as I view the whole case, is the construction to be given to Subsection 9 of Section 3 of the Acts of 1939, and particularly the words "subject to such consent and approval of the city of Charleston in any case as may be necessary". In my opinion, while it was not necessary for the State to legislate such restriction, it had the power to do so, particularly when such restriction applies to a power and authority granted to one of its agencies. It may, if it so desires, limit the power and authority of its agencies without surrendering any part of its ultimate or reserve authority. This, in my judgment, is what the Legislature intended in this instance, and my reasons for such opinion may be stated as follows:
I do not doubt that those who framed, and the Legislature which enacted, the 1939 Act were familiar with the following: (1) The nature and extent of the police power of the State under which the zoning of towns and cities for business, residences, and manufacturing purposes, and the construction of buildings, could be regulated; (2) that by reason of difficulties of applying a general law to such regulation to the varying needs of the towns and cities *686 of the State, such regulatory powers were, in most instances, if not all, delegated by the State to municipalities, by special acts or general law; (3) that prior to the 1939 Act, here involved, such powers were vested in the City of Charleston, and had been partially exercised, and would be exercised in the future to the extent that the growth of the city might demand; (4) that the Legislature recognized that the City of Charleston had a vital interest, no less than the State, in the development of the areas surrounding the State Capitol, and that sound public policy required that such development be proceeded with in a spirit of mutual recognition of the interests of each; and (5) that the Legislature having voluntarily, and in the public interest, delegated to the City of Charleston the power to zone the city and to adopt a building code, did not intend that the State should be the first to arbitrarily violate the ordinances which such delegation of power clearly authorized the city to adopt.
In view of these considerations, it is my opinion that what the Legislature intended was to recognize the interest of the City of Charleston in the location and type of construction of any building erected under the terms of the 1939 Act. As indicated above, the power of the State in such matters being supreme, the Legislature was not required to make this concession to the city, but it had the power to do so without surrendering its power to withdraw such concession as the same might affect future construction under the Act. The Legislature had the clear right to place a limitation on the power of the State Office Building Commission, and did so in clear language. The plain meaning of Section 3 of the Acts of 1939, reached by the slight transposition of language, is this: "Subject to the consent of the city of Charleston in any case as may be necessary the commission shall have power to construct a building or buildings on real property which it may acquire, or which may be owned by the state of West Virginia, in the city of Charleston, as convenient as may be to the capital building, together with incidental appropriate structures and facilities."
I am, therefore, of the opinion that the State Office Building Commission is without authority to proceed in the proposed construction of an office building under the 1939 Act without the consent and approval of the City of Charleston, so far only as the same applies to zoning and building code requirements. The bill of the plaintiff alleges that the consent and approval of the City of Charleston to the proposed location and construction is being withheld because the same violates both the zoning and building code ordinances, legally adopted under legislative authority, and on demurrer this allegation must be accepted as true. It is also alleged in the bill that both the city and the State have heretofore objected to the use, by private enterprise, of the lot now proposed as the location of the proposed office building, as a site for the location of a business building. In other words, the State is now proposing to erect a building of the same general type as both the State and the city objected to, and, we may assume, prevented the erection of the same since the 1939 statute was enacted. Perhaps this is not important. It may be that the ancient doctrine that the sovereign "can do no wrong", long since an outcast in our governmental philosophy, should be revived and applied to this case, and that the plain words of the statute should be twisted and misinterpreted to uphold the authority of a State agency to carry out a project which it refused to permit a private enterprise to undertake. I am forced to the belief that the State, through its Legislature, may do these things, but I contend that it has not done so; but if it had done so, in clear terms, I would, in all the circumstances of the case before us, condemn it as an abuse of power. In our scheme of things it is necessary that ultimate power must rest somewhere; but wisdom and fair dealing should govern its use.
It is suggested that the words "as may be necessary" applied to the words "consent and approval", as used in Subsection 9 of Section 3, of the Acts of 1939, destroy *687 or make ineffective any limitation of the commission's power, which but for them might exist. If the limitation of the commission's power created by requiring it to obtain the "consent and approval" before exercising the authority to locate and construct buildings be ignored, then, as a matter of logic, if the State has absolute power, not limited by its delegation of power to the city to adopt zoning and building code ordinances, to locate and construct such structures as it may desire, if proposed to be used for State purposes, no "consent and approval" from the city would be necessary. But this is not such a case. Here the Legislature is making a grant or delegation of a part of its police power, in connection with a matter in which the interests of the City of Charleston are involved, and as to which, in a general way, the Legislature had authorized the city to exercise control. In all reason, considering all the preceding circumstances, the words "as may be necessary" must have been used to give force to the authority already granted to the City of Charleston in the matter of zoning and construction. If they were not intended to have that meaning, then they have absolutely no meaning. It should not be assumed that the Legislature used language without intending it to have some force and meaning. There is, in my opinion, no plausible ground for any holding other than one under which the commission was expected to secure the consent and approval of the city as to the location and construction before proceeding with the location and construction of the buildings proposed to be erected.
It may be said that such a holding would give to the city a permanent veto of any building not in keeping with its reasoned plans, or even its whims. Not so. The Legislature at is next session following an abuse of the use of the delegated power of the city could correct the situation; for, as is well known, the Legislature may, by general law, amend the existing charter of any town or city, and, of course, may add to or diminish the authority of any agency it creates. Therefore, giving force to a delegation of power, so long as it exists, does not lessen or restrict the power of the State to recall such delegation at its will and pleasure, so long as vested rights accruing under such delegation of power are protected.
The suggestion that the fact that the present zoning ordinance of the city was not adopted until one month after the enactment of the statute of 1939, creating the State Office Building Commission, has a significance in connection with the suit at bar, is, in my opinion, without merit. The power of the city to adopt zoning and building code ordinances was delegated to it by the State in 1927, and its use contemplated to meet the needs of the city as it developed. The 1939 Act did not purport to conflict with the powers theretofore delegated to the city, but on the contrary, recognized them when the city's consent and approval to the exercise of a part of the authority granted thereby was recognized as necessary.
I have not discussed the serious question raised by the circuit court, touching the proprietary nature of the proposed enterprise. The provision providing that the proposed building might be leased for both public and private purposes casts doubt on whether the proposed enterprise is wholly for a public purpose. I assume it will not be contended that the Legislature has the power to put the State into an enterprise not in some way connected with a public purpose. The power to lease the proposed building to tenants engaged in private enterprises means the power to lease the whole thereof to such tenants, although perhaps not so intended.
Nor have I alluded to the alleged repudiation by the State of what has always been considered the well conceived "Gilbert Plan", and the effect of such repudiation on the setting and appearances of the Capitol grounds. What is now being proposed, either for good or bad, will endure for centuries. If, as alleged in the bill, the building involved, as proposed to be located, will mar the beauty of the setting for the Capitol and the other buildings and the grounds surrounding, then those who purpose to bring about this result will, as do all public officials, *688 answer to the public and to posterity for their acts. It is not within the power, or properly within the province of this Court, to deal with such questions; and for this reason I have not discussed them.
My dissent to the rulings of the majority is based solely on my belief that the powers of the State Office Building Commission to locate and erect buildings in the City of Charleston were limited by its creator, the Legislature, by requiring the consent and approval thereto by the governing authority of the City of Charleston. The Legislature having theretofore delegated powers to the city, in respect to zoning and building codes, intended to cooperate with the city to the end that its reasonable plans for city development should not be interfered with. In so acting, the Legislature did not intend to surrender any of the sovereign powers of the State, and did not have the power to do so. What it did was to delegate to the said commission a part of its powers, to be used in a manner which would recognize the powers it had already delegated to the City of Charleston. There is no inconsistency in this handling of the situation. If the city should become unreasonable in the exercise of its powers delegated to it, the Legislature had complete power to recall the powers so delegated, and proceed under its sovereign power to exercise its will. But, so long as the power so delegated in the city continues, and especially in cases where, as here, the existence of such powers is impliedly recognized by the Legislature, a State agency, in my opinion, should not be permitted to go beyond the limits of its power and thus nullify every existing zoning ordinance and every building ordinance, adopted at the instance of the State, so far as the same interferes with the plans of the agency, and be the first to repudiate the plans made by the city, in cooperation with the State, for the full development of the area surrounding the Capitol.
I would affirm the order of the Circuit Court of Kanawha County, overruling the defendants demurrer to the bill of the plaintiff, and remand the cause to said court for further proceedings.